THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.*
WILLIAM E. MALI.

*Exception to Prayers—Objection deemed Waived—Special
exception—Improper Instruction in an Action of Damages
against a Railroad Company—City Ordinance in respect of
Locomotive Engines within the Limits of the City—Act of
Negligence—Contributory negligence.*

Where exception is taken to the granting of the prayers of the oppo-
site party, only upon the ground that no evidence was offered to·
sustain them, objection to them as not asserting correct legal
propositions, will be deemed waived, and will not be considered
on appeal.

Where prayers are specially excepted to upon the ground that the
evidence is not legally sufficient to support them, the exception
must clearly and distinctly state wherein the evidence is supposed
to be defective.

In an action against a railroad company to recover damages for per-
sonal injuries, alleged to have been occasioned through the negli-
gence of the defendant, a prayer offered by the defendant instruct-
ing the jury that they were entitled to consider the familiarity of
the plaintiff with its tracks and their use, could not properly be
granted. The Court in admitting the evidence of the knowledge
of the plaintiff, and, in so doing, allowing it to be weighed for all
legitimate purposes, went as far as it could properly go.

Where a city ordinance required that when a locomotive engine was
used within the limits of the city, a man should be required to
ride on the front of the locomotive engine, when going forward;
and when going backward, on the tender, not more than twelve
inches from the bed of the road, and in an action against a rail-
road company to recover damages for injuries claimed to have been
sustained through defendant's negligence in the management of
its engine, it was shown that the engine by which the plaintiff was
injured, was so constructed in accordance with modern improve-
ments in locomotives, that it would be unsafe to place a man in the
position required by the ordinance, his absence from the tender at

the time of the accident would not of itself, be an act of negligence.

But while a literal compliance with the ordinance should not be exacted, its spirit and intent must be observed.

If an adult in the full possession of all his faculties, and familiar with the crossing and the movements of the cars, attempts to cross a railroad in front of a moving engine in full view and within twelve feet of it, such an act amounts to contributory negligence in law, and the jury should be so instructed.

APPEAL from the Circuit Court for Baltimore County.

The case is sufficiently stated in the opinion of the Court. The insertion of the prayers is deemed unnecessary. The jury gave a verdict for the plaintiff for $5000 and judgment was entered thereon. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*W. Irvine Cross,* and *John K. Cowen,* for the appellant.

*Samuel Snowden,* for the appellee.

STONE, J., delivered the opinion of the Court.

This was an action brought against defendant for negligence resulting in injury to plaintiff.

The plaintiff gave evidence tending to prove that the tracks of the defendant were laid on Nicholson street in Baltimore City and were constantly used by its trains. That where Cooksie street crosses Nicholson, there is a drain running alongside the railroad track, and that said drain is covered with oak plank and is kept in order by defendant. That in May, 1884, the plaintiff while crossing said track had his foot caught in a hole in said covered drain or little culvert between the edge thereof and the rail, and while in that condition, an engine of defendant

Baltimore & Ohio R. R. Co. *vs.* Mali.

backed down upon him and cut off his foot. That the hole in which his foot was caught was worn wider than necessary for the flange of a car wheel to pass through it. That the engine was standing still, about ten or twelve feet from the crossing when the plaintiff attempted to cross. That as soon as he got on the track the engine commenced backing, and no signal was given when it started. That plaintiff could have crossed without injury except for catching his foot in the hole, and he could not get it out before the train was upon him.

It will be seen that the gravamen of the complaint of plaintiff is that the drain or little culvert was left in a dangerous condition by the defendant, whose duty it was to keep it in order, and that in consequence of its condition the accident happened. This is his principal point, although there are other acts of negligence on the part of defendant also complained of, such as starting the engine without any signal, and having no look-out on the tender as required by a city ordinance.

But as he says, that he could have crossed the street in perfect safety, except for the hole in the drain, the foundation of his suit is the defect in the drain. The other acts of negligence he complains of are only ancillary to this main one.

The defendant on the other hand offered evidence tending to prove, that the engine and tender had given the caboose a shove, and had then uncoupled it and was following it along, the tender in front and engine backing it, and about ten or twelve feet distant from it, and ringing the bell, when the plaintiff attempted to cross the track between the moving engine and tender, and the caboose, and that he stumbled and fell, and was caught by the tender.

The theory of the defendant is, that the plaintiff in attempting to cross the street in front of and in full view of, and so near to, a moving engine, by such act was guilty

of contributory negligence, and therefore could not recover.

At the trial the plaintiff offered ten prayers, which were all granted by the Court. There was no general exception taken by the defendant to the granting of the plaintiff's prayers or any of them. There was a special exception found on page 39 of the record, which is in these words:

"The defendant excepts specially to the granting of each and all of the plaintiff's prayers, because no evidence has been offered legally sufficient to sustain the same."

There is no exception reserved to the plaintiff's prayers as correct legal propositions, the want of evidence to support them being the only objection urged against them. If then we could consider them at all, our inquiry would be only directed to the evidence upon which they were based, and not to the correctness of the legal propositions contained in them. It was optional with the defendant to except to them on both grounds—the insufficiency of the evidence, and the incorrect statement of the law, or to select either ground. By selecting only one ground of exception he waives the other. But we do not think, that his exception points out the error he complains of, with that distinctness which the law requires before it can be noticed by the Appellate Court.

It has been the object of the legislation, and the rules and the decisions of this Court ever since the Act of 1825, to restrict the determination of the Appellate Court, to the questions that were clearly raised and decided by the Court below.

The propriety of this course is so manifest that it needs no argument to support it. Thus since that Act it has been held that a prayer which says, "That under the pleadings and evidence in this case, the plaintiff is not entitled to recover" is improper, because it will be impossible to ascertain from the record what precise point was decided by the lower Court.

The Act of 1825 was followed by the Act of 1862, and still later by the rules of the Court of Appeals, adopted in 29*th Md.*, and which have all the force and effect of a statute. It is upon these rules that the point now before us depends.

By the 5th rule it is among other things provided: "But if a *defect of proof* be the ground of the ruling or exception, then the particulars in which the proof is supposed to be defective shall be briefly stated, and all the evidence offered in anywise connected with such supposed defect, shall be set out in the bill of exception."

There are ten long prayers of the plaintiff embracing a great variety of facts, which are excepted to specially in this case.

There are certainly no particulars in which such alleged defect of the evidence consists, set out in the exception; from aught that appears in this record, the attention, neither of Court nor counsel in the Court below, was called to the defect which the appellant in his brief and argument, now insists upon in this Court. It was for the purpose of preventing this very thing that the rule was made. Had the appellant stated in his special exception what he now states in his brief, the rule would have been complied with. The defect he complains of in his brief is that there is no evidence that Nicholson street had been ever recognized by the city.

There may be some cases in this Court where the rule may not have been strictly observed, and yet the special exception was considered. But no case can be found where the question has ever been raised and decided, that it was unnecessary to state the defect explicitly in the special exception.

In *Wilson vs. Merryman,* 48 *Md.*, 328, the Court admitted that the rule had not been complied with *in this,* that the *special bill of exception* did not contain the evidence. But the special exception in that case did contain a state-

ment of the defect in proof relied on. In that case the Court looked at the whole evidence which was contained in other bills of exception, to see if the alleged defect was true. But we think it essential to be done in every case of a special exception, to show the defect relied on. To hold otherwise, would be to rescind a wise and salutary rule.

The correctness of the plaintiff's prayers not being before us, we will proceed to examine the prayers of the defendant which were refused, and which are properly for review.

The 8th prayer was properly rejected; that prayer instructed the jury that they were entitled to consider the familiarity of the plaintiff with the tracks and their use, &c. Prayers of this character have been often condemned by this Court. The Court admitted the evidence of the knowledge of plaintiff, and in so doing allowed it to be weighed for all legitimate purposes; this was as far as the Court could properly go. *Johns vs. Marsh*, 52 *Md.*, 323.

The 10th prayer, relating to a reduction of plaintiff's salary by collusion, was properly rejected, there being no evidence to support it.

The 11th prayer we do not understand the appellant to press, and his 1st, 2nd, 3rd, 7th and 9th are abandoned, and the 5th is included substantially in plaintiff's 6th prayer, which was granted.

The defendant's 4th, 15th and 16th prayers relate to an ordinance of the City of Baltimore relative to locomotives when used in the city. The ordinance among other things requires that when a locomotive engine is used within the limits of the city, a man shall be required to ride on the front of the locomotive engine when going forward, and when going backward on the tender not more than twelve inches from the bed of the road, and imposes a penalty of ten dollars for each violation.

If it is true, as contended by the appellant, that since the passage of the first ordinance the power of the loco-

Baltimore & Ohio R. R. Co. *vs.* Mali.

motive engine has been so changed, that it is unsafe and impracticable to place a man in the position required by the ordinance, upon an engine of modern construction, it would be most unreasonable to hold the road guilty of negligence for not doing that which would endanger the life of the employé. It can hardly be contended that it was the intention of the ordinance to prevent the railroads from availing themselves of all the modern improvements in locomotives, and to compel them to continue the use of such engines that would allow the man to stand in safety within twelve inches of the ground, although such engines might be far inferior in every respect to the others. Whether the locomotives that are now in general use are so constructed that it is unsafe to place a man in the position required by the ordinance is a question of fact, and like other facts, to be found by the jury. If so found, and that the locomotive by which the plaintiff was injured was of the improved modern construction, the defendant was right in claiming, that the absence of the man on the tender was not of itself an act of negligence.

But while we have no doubt, if the fact is as claimed by the defendant, that a *literal* compliance with the ordinance is unnecessary in suits like the present, yet we are equally clear in our opinion that its spirit and intent must be observed by the roads. There must be some substitute suitable to the new style of engine, and which will answer all the purposes required by the ordinance. Such substitute, it is and will be the duty of the roads to furnish. Every reasonable precaution must be used by them to prevent injury to persons and property in the streets of a city. We think, therefore, that at least the first part of the defendant's 15th prayer should have been granted.

The other prayers of defendant relate to contributory negligence on the part of the plaintiff. The contention of the defendant being that plaintiff by his own negligence directly contributed to the result, it was entitled to have the law on that subject given to the jury.

The plaintiff contends that the subject is fully covered by the instructions granted at the instance of the plaintiff. In this we do not concur. It is true that in several of these prayers there is a proviso of unless the jury find that plaintiff directly contributed to the accident by his own want of care. But we think the defendant was entitled to more than such a proviso, and to some extent a definition of what would constitute contributory negligence, provided the jury should find the facts to exist. The defendant's theory is that the engine having given the caboose a shove, and then being uncoupled from it, was slowly following the caboose at an interval of ten or twelve feet, when plaintiff attempted to pass between engine and caboose, and was caught and injured.

While we reiterate what has been so often said by us, that negligence, whether contributory or otherwise, is generally a question of fact rather than of law, and should be left to the jury to determine from all the facts and circumstances of the case, yet there are some facts so plain and patent that the Courts are justified in pronouncing them contributory negligence in law. Thus, if an adult passenger thrusts his arm out of the window of a car in motion and is injured by so doing, it has been held, if the facts are so found, that such an act is contributory negligence *in law*, and the jury should be so instructed.

So, if in this case the jury were satisfied that the plaintiff, an adult in the full possession of all his faculties, and familiar with the crossing, and the movements of the cars, attempted to cross a railroad in front of a moving engine in full view and within ten or twelve feet from it, we think that such an act amounted to contributory negligence in law, and the Court should have so instructed the jury, and the 14th prayer of defendant should have been granted.

As this case will be tried again, it may not be amiss to say, that we can see no good purpose that can be subserved.

to either party, by the multiplicity of the instructions asked for, in this and many other cases. Their length and number tend to perplex, and not to instruct and enlighten the jury for whose benefit they are given. In stating their case in so many different ways, and with such often *unnecessary* minuteness, errors sometimes creep in that compel an unwilling reversal.

There are some exceptions to evidence in the record, but the evidence excepted to is of so slight and immaterial a character and so covered by the other testimony, that we think it unnecessary to notice them.

> *Judgment reversed,*
> *and new trial awarded.*

(Decided 24th June, 1886.)