FLORIDA CENTRAL & PENINSULAR RAILROAD COMPANY, APPELLANT, VS. EDWARD WILLIAMS, APPELLEE.

DAMAGES FOR PERSONAL INJURIES—RAILROAD STREET · CROSSING—CARE TO BE USED BY THE BLIND—COMPARATIVE NEGLIGENCE—DIRECTING VERDICT.

1. Where steam railroads are laid and operated along or across the streets of populous towns or communities, where numerous people of all conditions and descriptions are aggregated, or likely to be, it is their duty to operate the dangerous implements used by them with the utmost degree of care, strictly commensurate with the circumstances by which they are there surrounded, in order to avoid injury to others. But while it

is thus the duty of such companies to guard against injury to others with the utmost caution, care and vigilance, there is at the same time a mutual obligation resting upon the public, and each and every of them, in the presence of such dangerous surroundings, to exercise such a degree of care, caution and vigilance for their own safety as is commensurate with the known dangers there present.

2. It is gross negligence in a blind man to expose himself alone and unattended in any situation where he knows that the faculty of sight is absolutely necessary to the safety of life and limb.

3. The blind have as much right to frequent railroad depots, public crossings and other places of danger as any other of the general public, but when they do so, due care dictates that they must provide themselves with such surroundings while there as are reasonably necessary to avoid upon their part all the known dangers that encompass the place.

4. In an action for an injury, occasioned by the alleged negligence of the defendant, the negligence, if any, of either plaintiff or defendant, is to be measured by the condition of things at the place where the accident took place, as they were known to exist by each of the parties at the time the acts of each are complained of as being negligent.

5. Though the defendant may be guilty of *some* negligence at the time of the accident, yet, in order to justify a recovery, it must be made to appear that the particular negligence of which it was at the time guilty *was the proximate cause* of the plaintiff's injury.

6. From the code of the State of Georgia our Legislature has adopted the following, as section 1 of Chapter 3744 laws, approved June 7th, 1887: "That no person shall recover damages from a railroad company for injury to himself or his property when the same is done by his own consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury trying the case in proportion to the amount of default attributable to him." Its effect is to abrogate in Florida the old rule prevailing almost universally elsewhere, that *wholly* relieved the defendant from all liability when *contributory* negligence on the part of the plaintiff was shown, and introduces here the modern doctrine of *comparative* negligence, by which the contributory negligence of the

plaintiff does not *wholly* relieve the defendant from liability, but entitles him to a credit only in reduction of the amount of his liability. The judges in giving this statute in charge should instruct the juries that, in making the apportionment between the plaintiff's and defendant's negligence, they should not take into consideration any negligence *of either of the parties* that did not directly or proximately contribute to the bringing about of the injury complained of.

7. The judge should never give an affirmative charge directing a verdict for the defendant, that is tantamount to an order sustaining a demurrer to the evidence, unless it is *clear* that there is no evidence whatever adduced that could in law support a verdict. If the evidence is conflicting, or will admit of different reasonable inferences, or if there is evidence *tending* to prove the issue, the case should be submitted to the jury for their finding on the facts, and not taken from them to be passed upon by the judge as a question of law.

8. The engineer in charge of a railroad locomotive has the right to presume that an adult person whom he sees upon or beside the track ahead of his approaching engine, is in possession of his faculties, and that he will obey the instinctive law of self-preservation by getting off the track, if already on it, or that he will not get on it, if already off; and, in such case, it would not be negligence on the engineer's part if he failed to attempt to stop his engine, unless he knew the party, and that he labored under some disability that prevented him from knowing of his danger, or that would prevent his getting or keeping out of the way, or unless he sees evidences of such disability from the party's actions or appearance, or that he can not or will not get or keep out of the way.

Appeal from the Circuit Court for Alachua county.

The facts in the case are stated in the opinion of the court.

*John A. Henderson* and *W. W. Hampton*, for Appellant.

*S. Y. Finley*, for·Appellee.

TAYLOR, J.:

Edward Williams, the appellee, sued the appellant in case for personal injuries received in being run over by one of the defendant's engines, and recovered judgment for $500, from which the defendant appeals.

The declaration, in substance, alleges that on the 6th day of January, 1890, while the plaintiff was upon and going along a highway within the corporate limits of the town of Gainesville, in Alachua county, at and near the place where the defendant's railroad crosses two other railroads, the Savannah, Florida and Western Railway, and the Florida Southern Railway, and at and within the depot limits of said two last named roads in said town, the defendant through its servants and agents were then and there driving and running a locomotive engine and train of cars on and along the said road at and near the crossing aforesaid, within the limits of the public depot aforesaid, and within the corporate limits of said town, and in so doing failed to ring the bell or sound the whistle or to give any other notice or warning of its movement.   The plaintiff was totally blind, and entirely dependent upon his sense of hearing for safety.   That with all care and diligence he was then and there in the act of going across the defendant's road at the said street crossing, and the defendant then and there so carelessly, improperly and wrongfully drove and managed the said engine that it ran against and struck the plaintiff, throwing him with great violence upon the ground and greatly bruised, hurt and wounded him, crushing one of his feet so that the same had to be amputated, rendering him, when coupled with his blindness, wholly helpless for life, and whereby he suffered great pain,

injury and damage.    The defendant pleaded the general issue of not guilty.

At the trial the proof showed that the accident happened at or within a few feet of the point where the defendant's roadway crosses the tracks of two other railroads, the Savannah, Florida and Western Railway, and the Florida Southern Railway, all of which tracks, with their sidings, cross each other in a net work of rails near the center of where two public streets of the town of Gainesville cross each other, and which crossing is within the depot yard limits of the three railroads, and is a place much frequented by the people of the town.    That engines, trains and cars are continuously switching and moving over these tracks of the three roads during almost every hour of the day. That the plaintiff at the time of the accident was totally blind, and had been so for several years.    That he was struck by the tender of an engine of the defendant that was engaged in switching out cars, and that was running backwards at the very slow rate of about two (2) miles per hour.    That the exact place where he was struck was the usual public street crossing over the tracks of the defendant's road for persons coming from or going to the depots of the Florida Southern Railway, and the Savannah, Florida and Western Railway.    There is no proof that the plaintiff had any one with him to guide him, but, from the proofs, he seems to have been making his way alone. It is evident from the testimony of the plaintiff's witnesses that he attempted to cross over the defendant's track immediately in front of the moving tender, and was struck by the tender as soon as he got on the track, which threw him off and over on the track of the Savannah, Florida and Western Railway, where he

began falling around on the tracks, and, according to one witness, would have rolled immediately under the engine if the witness had not run to and pulled him away. He received some scalp wounds about the head, and had one foot mangled so that it had to be partially amputated. There is some conflict in the proofs as to the giving of signals by the engine; the plaintiff's witnesses swearing that no bell was being rung on the engine or whistle sounding immediately at the time of the accident, but that the bell had been ringing but was stopped when the engine was about thirty or forty yards off from where it struck the plaintiff. The proof is conflicting also as to whether the engineer in charge of the engine was keeping a lookout in the direction that he was going at the time of the accident. One of the plaintiff's witnesses swearing that the engineer at the time was looking in the opposite direction, and that no one was on the lookout; while the engineer himself swears that he was vigilantly looking in the direction he was backing his engine, and besides had a brakeman ahead of him on the ground at a switch, some twenty or thirty feet from where the plaintiff was struck. The brakeman corroborates this statement. The engineer swears also that his track was clear, and that he did not see the plaintiff at all until after he was struck, when he immedtately brought his engine to a standstill, not exceeding twelve feet from where he was struck. The plaintiff himself did not testify. The uncontradicted proof is that the plaintiff remarked, immediately after the accident, that "it was my own fault; I thought it was an engine on the other road." One of the plaintiff's witnesses swore that the plaintiff was nearly across the track when struck; while another of his witnesses swears that he was in the act of

stepping upon the track when struck. There is no dispute as to the fact that the engine was moving very slowly. The engineer in charge of the engine did not know the plaintiff, or of his infirmity of sight, until after the accident. The brakeman who testified that he was at a switch ahead of the engine about twenty yards from where the plaintiff was struck, signaling to the engine to back down, swears that he did not see the plaintiff at all before he was struck. He also swears, and it is not contradicted, that on another previous occasion he had to stop his engine in order to get the plaintiff off the track; that he stopped because the plaintiff did not seem to try to get off the track.

Upon this testimony the Judge gave the following charges: 1st. It is the duty of railroad companies and their servants and employes to employ and exercise diligent and vigilant care and precaution in running their trains and locomotive engines at public crossings and streets to prevent injury to individuals. Such care and caution embraces the duty of ringing the bell or blowing the whistle, and giving such other warning as prudence would suggest, and also of stopping the train if practicable, and of keeping a constant lookout while running to prevent injury to any one who may be at, on or about their tracks at such public crossings. 2nd. It is not a trespass on the part of the public to be at, on or about a public crossing of a railroad in a town or city. The public or any individual has the right to be at such a public crossing as their pleasure or business may require or induce them. 3d. If you find from the evidence that the plaintiff was, at the time of the injury alleged, at a public crossing and depot, and at the crossing where the public were accustomed to go and to be it

makes no difference whether it was necessary for him to go there or not.   If he was there at such public place or crossing, and was injured by the negligence of agents or servants of the defendant company, and you should so find from the evidence, you should find for the plaintiff.    4th. It is not of itself contributory negligence on the part of the plaintiff to go over or cross a railroad in a city or village at a public crossing in the day time.   And if you find from the evidence that the plaintiff was run over and injured by the careless conduct of defendant's agents or servants, with or without contributory negligence on his part, you should find for the plaintiff.   If you find from the evidence that at the time of the injury the plaintiff was blind and could not see the approach of the train at such public crossing, it would not be a contributory negligence for him to attempt to cross at such public crossing at a place where the public were accustomed to cross, unless he heard or otherwise knew or had reason to apprehend the approach of the train. But if you believe from the evidence that the plaintiff was blind and could not see the approaching train, although he was out of the way of the approaching train, this will not relieve the defendant from liability, provided you are satisfied from the evidence that the injury complained of resulted from the negligence of the defendant, either in whole or in part.   And if you find from the evidence that the injury of the plaintiff resulted either in whole or in part from the negligence of the defendant, you will find for the plaintiff; and if only in part, you will diminish the plaintiff's damages in proportion to the amount of negligence attributable to him.   5th. The jury can take into consideration upon a question of

414        SUPREME COURT.

Fla. Cen. & Pen. R. R. Co. v. Edward Williams.—Opinion of Court.

the damage all the circumstances of the parties at the time, and can consider all and every kind of injury to the plaintiff which evidence may show resulted from the negligence of the defendant's servants.    6th. The jury are the sole judges of the credibility of the witnesses.

The following charges were given at the defendant's request, but with additions or qualifications by the court as therein indicated: 7th. This is an action by a stranger against the railroad company for an alleged injury to him, inflicted by said company while he was crossing the said company's railroad track.    In order to entitle the plaintiff to recover, he must allege and prove that such injury was done through the carelessness or negligence of the defendant, and that the plaintiff was free from any degree of carelessness or negligence.    (*Addition by the Court:*) But if you believe from the evidence that the plaintiff in this suit and the agents and employes of the defendant company were both in fault, then, in that case, the plaintiff may recover in this action, but the damages should be diminished by the jury in proportion to the amount of default attributable to the plaintiff; and in order to determine such proportion, the jury should consider all the facts and circumstances proven on the trial which bear upon the question of mutual negligence or want of due care.    8th. The plaintiff's right upon the railroad track was subordinate to that of the railroad company, and if you believe from the evidence that the plaintiff did not use reasonable care to avoid the accident, then he can not recover, and you will find for the defendant.    9th. If you believe from the evidence that the plaintiff was apprised of the approach of defendant's train, and ventured to cross

ahead of the train, miscalculated his danger and thought he had time to pass, he is guilty of such contributory negligence as will defeat his recovery, and you should find for the defendant. (*Addition by the Judge:*) But if you believe from the evidence that the plaintiff in this suit and the agents and employes of the defendant company were both in fault, then, in that case, the plaintiff may recover in this action, but the damages should be diminished by the jury in proportion to the amount of default attributable to the plaintiff; and in order to determine such proportion, the jury should consider all the facts and circumstances proven on the trial which bear upon the question of mutual negligence or want of due care. 10th. If you believe from the evidence that the plaintiff stepped off one track because a train was approaching from behind, and without looking around walked along the side of the track and was struck by defendant's engine, he being well acquainted with the locality, he is guilty of contributory negligence, and can not recover. (*Addition by the Judge:*) Unless you find from the evidence that the defendant was guilty of no negligence whatever. 11th. If you believe from the evidence that the plaintiff was a trespasser on the defendant company's railroad track when injured, then he cannot recover in this suit unless you believe that he used extraordinary care, and was wantonly or wilfully injured. (*Addition by the Judge:*) But if you believe from the evidence that the plaintiff was blind and hard of hearing at the time of the accident, and did not know of his peril; and if you further believe from the evidence that notwithstanding his blindness and partial deafness, he could with proper caution have ascer-

tained the danger of his position at the time he was struck by the tender attached to the engine, and that he was guilty of contributory negligence; and if you believe also from the evidence that the whistle was not blown, nor the bell rung, and that all reasonable care and precaution was not taken by the defendant to prevent the injury complained of, then you must find for the plaintiff; and in your verdict you should diminish the plaintiff's damages in proportion to the amount of the default or negligence which the evidence may show was attributable to him. 12th. If you believe from the evidence that the plaintiff was a blind man, and that he was familiar with the location where he was injured, and deliberately and knowingly walked upon the defendant's railway track where he had reason to believe that the train was approaching, he can not recover in this action, and you will find for the defendant. (*Addition by the Judge*:) But if you are satisfied from the evidence that the negligence of the defendant in anywise contributed to the injury of the plaintiff as a result of the accident, then you must find for the plaintiff. And if you are satisfied from the evidence that the plaintiff was guilty of contributable negligence, you should in your verdict diminish the plaintiff's damages in proportion to the amount of default or negligence which the evidence may show is attributable to him. 13th. If you find from the evidence that the plaintiff is entitled to damages, you can only find such actual damages as such proof may show he has sustained. He can not recover exemplary damages. And you should take into consideration the character and circumstances of the person injured in estimating the amount of damages. 14th. In order that you may

find for the plaintiff, it will not be sufficient for you to find that he was injured by the defendant's engine. The defendant is not liable except for the negligence of itself or its employes, and such negligence must be proven by the evidence before you. The mere fact of injury raises no presumption of negligence of the defendant or its employes.

The following charges were requested by the defendant, but were refused by the judge: 15th. The facts in this case show contributory negligence in the plaintiff, and do not show such negligence by the defendant or its employes as to authorize a verdict in favor of the plaintiff, and you will find for the defendant. 16th. The employes of a railroad company in charge of its train or engine have a right to presume that an adult person walking on the track is in possession of his faculties, and that he will get off to avoid the train. 17th. And the railroad company will not be responsible for an injury to him by the train or engine, unless the employes in charge were negligent in not taking proper measures to avoid an injury to him after they had reasonable cause to apprehend that he would not get off.

The defendant moved for a new trial upon the grounds that the verdict was contrary to the evidence and the weight thereof, and contrary to the charge of the court; and because the court erred in giving the first, second, third and fourth charges; and in giving the additions made by the court to the charges requested by the defendant; and in refusing to give the fifteenth, sixteenth and seventeenth charges requested by the defendant; which motion was denied. The refusal to grant this motion is the first error as-

27

signed and includes all the other assignments of
error.   In disposing of them we will confine our dis-
cussion to the judge's instructions on the law of the
case.

The first instruction given stated the law correctly.
The second and third instructions stated the law cor-
rectly as to the plaintiff not being a *trespasser* when
passing over the defendant's tracks at public crossings,
and as to his right, with the rest of the public, to be
at or about such crossings; but, in order to prevent
their being misleading it would be better for them to
include the proposition, that though *this plaintiff*,
with the rest of the public, had a right to be there, and
was not a trespasser in being there, yet that when he,
in his blind condition, went about places of such known
danger, *due care* on his part required that he should
take his blindness into consideration, and to provide
against the extra hazards to which it subjected him.
The fourth instruction under the undisputed facts in
this case, was erroneous.   The unmistakable inference
to be drawn from it was that *this plaintiff*, notwith-
standing his *blindness*, had the same right, to be ex-
ercised by him in the same manner, as the rest of the
public to be at, *on* or about the public crossings of the
railroads where he was hurt, and that his being there
in a condition of total blindness was no more contrib-
utory negligence *in him* than in any other of the pub-
lic who were possessed of the faculty of sight.   It
wholly ignores the uncontroverted fact of the plain-
tiff's *blindness* as a condition potently tending to
fasten *upon him* gross carelessness in going, unat-
tended, about a place so especially fraught with dan-
ger to all persons in his condition, not possessed of all
the faculties necessary to the prompt discovery and

avoidance of impending danger. Where steam rail-roads are laid and operated along or across the streets in populous towns or communities, where numerous people were aggregated, and where all descriptions of the human family may be expected to be found—the lame, the aged and infirm, the blind and the deaf, along with the man possessed of all his faculties in perfection—it is their duty to operate the dangerous implements with which they work with the utmost degree of care, strictly commehsurate with the circumstances by which they are there surrounded, in order to avoid injury to others. But while it is thus the duty of such companies to guard against injury to others with the utmost caution, care and vigilance, there is at the same time a mutual obligation resting upon the public, and each and every of them, in the presence of such dangerous surroundings, to exercise such a degree of care, caution and vigilance for their own safety as it is commensurate with the known dangers there present. Illinois Central R. R. Co. vs. Hammer, 72 Ill. 347. The blind man appreciates, better than any one else, the misfortune of the disability under which he labors, and the extra hazards to which that misfortune subjects him, and that prudence, (a synonym for *due care*), *with him*, at all times dictates that when alone he shall avoid all known places of danger where the gift of sight is necessary to perfect safety. What would be an entirely safe path for the man with perfect sight, would be a death-dealing pitfall for the blind man. Prudence dictates to the one that he can tread it safely; to the other that it leads to his destruction. It is gross negligence in a blind man to expose himself alone in any situation where he knows that the faculty of sight is absolutely necessary

to the safety of life and limb. Such was the character of the place where this plaintiff received his injury. A net-work of railroad tracks, with engines and cars constantly moving over them in different directions and in close proximity to each other, where the signals of warning and noises made by the different engines would necessarily mislead and confuse a person wholly dependent upon the sense of hearing for his guidance, as was illustrated in this instance when this plaintiff declared, in effect, that he heard this engine, but thought it was on the other road. The blind man has as much right to frequent railroad depots, public crossings and other places of danger as any other of the general public, but when he does so, *due care* dictates that he must provide himself with some surroundings while there as are reasonably necessary to avoid upon his part all the known dangers that encompass the place. Lake Shore & Michigan Southern R. R. Co. vs. Miller, 25 Mich. 274; Holmes' Common Law, p. 109; Marks' Admr. vs. Petersburg R. R. Co., 88 Va. 1, 13 S. E. Rep. 299; Fusili vs. Missouri Pacific Ry. Co., 45 Mo. App. 535; Railroad Company vs. Houston, 95 U. S. 697; Winn vs. City of Lowell, 1 Allen, 177; Sleeper vs. Sandown, 52 N. H. 244; Harris vs. Uebelhoer, 75 N. Y. 169; Louisville, New Albany & Chicago Ry. Co. vs. Stommel, 126 Ind. 35, 25 N. E. Rep. 863; Galveston, Harrisburg & San Antonio Ry. Co. vs. Ryon, 80 Texas, 59, 15 S. W. Rep. 588; Purl vs. St. Louis, K. C. & N. Ry. Co., 72 Mo. 168; Davenport vs. Ruckman, 37 N. Y. 568; Mynning vs. Detriot, Lansing & Northern R. R. Co., 59 Mich. 257, S. C. 23 Am. & Eng. R. R. Cases, 317; Beach on Contributory Negligence, sec. 396; Cogswell vs. Oregon & California R. R. Co., 6 Oregon, 417. In Rays work on Neg-

JANUARY TERM, 1896.     421

Fla. Cen. & Pen. R. R. Co. v. Edward Williams.—Opinion of Court.

ligence of Imposed Duties, p. 134, it is aptly and correctly said that "in an action for an injury, occasioned by the alleged negligence of the defendant, the negligence, if any, of either plaintiff or defendant, is to be measured by the condition of things at the place where the accident took place, as they were known to exist by each of the parties at the time the acts of each are complained of as being negligent." The blindness of the plaintiff was not known to the defendant's engineer here, but was known to the plaintiff, and it should have been given its due weight in the consideration of the question of negligence on the part of the plaintiff in exposing himself in such a place. The fourth charge given wholly ignores these principles of law, and, under the proofs in the case, was erroneous.

The additions by the judge to the seventh, ninth, tenth and eleventh instructions were misleading in that they wholly ignore the principle that, though the defendant company may have been guilty of *some* negligence at the time of the accident, yet that, in order for the plaintiff to recover, it must appear that *the negligence* of which it was at the time guilty *was the proximate cause of the injury to plaintiff*. The addition to the eleventh charge is particularly faulty in this respect. In it the jury are told that "if the whistle was not blown, nor the bell rung, and that all reasonable care and precaution was not taken by the defendant to prevent the injury complained of, then you must find for the plaintiff." Here the jury was told that if the whistle was not blown, nor the bell rung, they must find for the plaintiff, regardless of whether the failure to comply with those precautions *contributed* in any way to the bringing about of the accident, or that the

injury was in any way the result of such omission.
Indianapolis & St. Louis R. R. Co. vs. Blackman, 63
Ill. 117; Houston & Texas Central R. R. Co. vs. Nixon,
52 Texas, 19; 2 Shearman & Redfield on Negligence
(4th ed.), sec. 467. The feature of the additions by the
judge to all of these charges, to the effect that if both
the plaintiff and defendant were guilty of negligence,
the jury should make the damages *proportionate* to the
negligence attributable to each, was proper, under the
provisions of the following section 1 of Chapter 3744
laws of Florida, approved June 7th, 1887: ''That no
person shall recover damages from a railroad company
for injury to himself or his property when the same is
done by his own consent, or is caused by his own neg-
ligence. If the complainant and the agents of the
company are both in fault, the former may recover,
but the damages shall be diminished by the jury try-
ing the case in proportion to the amount of default at-
tributable to him.'' As was said in the case of Duval
vs. Hunt, 34 Fla. 85, 15 South. Rep. 876, this provis-
ion of our statute law was adopted from the Code of
the State of Georgia. With its wisdom we have noth-
ing to do. It was the law of this case, and the sole
duty of the courts is to apply it, leaving the question
of its propriety to the source of its creation. Its pro-
visions have been frequently invoked in the courts of
the State of its origin, but, as might well have been
expected, they have not undertaken the apparently
hopeless task of formulating any rules for the guid-
ance of juries in making the *apportionment*, but have
contented themselves, as must we, by giving them
the law in the language of the statute itself, leaving
the juries to work out the equitable problem as best
they may from a reasonable consideration of the facts

and circumstances in proof.   Macon & Western R. R.
Co. vs. Johnson, 38 Ga. 409;  Central Railroad &
Banking Co. vs. Dixon, 42 Ga. 327; Georgia Railroad
& Banking Co. vs. Neely, 56 Ga. 540; Central Rail-
road vs. Brinson, 64 Ga. 475;  Same vs. Same, 70 Ga.
207;  Savannah, Florida & Western Ry. Co. vs.
Stewart, 71 Ga. 427.   There is an underlying prin-
ciple applicable to all cases of negligence, however,
that holds good in cases falling within the provisions
of this statute as in others; that is, that the negli-
gence proved against the defendant must, in order to
justify recovery, by the *direct* or *proximate cause of
the injury*, directly or proximately contributing to
its result.   The courts in giving this statute in charge
should instruct the juries that in making the appor-
tionment between the plaintiff's and defendant's
negligence, they should not take into consideration
any negligence *of either of the parties* that did not
directly or proximately contribnte to the bringing
about of the injury complained of.   Chicago & North-
western Ry. Co. vs. Carroll, 12 Ill. App. 643.   In
this respect the judge's charges here, based upon this
statute, are faulty also.

As the case goes back for another trial, it is proper
to say that the seventh, eighth, ninth, tenth, eleventh
and twelfth instructions as originally prepared and
requested for the defendant were erroneous because
they ignore the fact that, under this statute, contrib-
utory negligence on the plaintiff's part no longer
*wholly relieves* the defendant from all liability, but
only entitles it to credit in reduction of the amount of
its liability.   The addenda by the judge sought to re-
lieve them of this defect; but, in the form presented,
renders them confusing by making them state oppos-

ing propositions of law. They should be entirely reconstructed to avoid the defects pointed out. The eleventh instruction should not have been given at all, as there is nothing in the case even tending to characterize the plaintiff as a trespasser on the defendant's tracks.

The thirteenth instruction given at the defendant's request was erroneous in requiring the *character* of the plaintiff to be taken into consideration in the admeasurement of the damages. There is no rule of damages in such cases that authorizes or requires a plaintiff's *character* to weigh either for against him in the adjustment of injuries received through the negligence of others, and it was erroneous to infuse it into the case.

The fifteenth charge requested by the defendant and refused by the judge is in the nature of a demurrer to the evidence. There was no error in its refusal. Such a charge, operating practically as a non-suit to the plaintiff, should never be given unless it is clear that there is no evidence whatever adduced that could in law support a verdict. If the evidence is conflicting, or will admit of different reasonable inferences, or if there is evidence *tending* to prove the issue, it should be submitted to the jury as a question of fact, and not taken from them to be passed upon by the judge as a question of law, as is attempted in this charge. Cogswell vs. Oregon & California R. R. Co., 6 Oregon, 417; Kelly vs. Union Railway & Transit Co., 95 Mo. 279, 8 S. W. Rep. 420, S. C. 35 Am. & Eng. R. R. Cases, 396; State, use of Dyrenfurth vs. Baltimore & Ohio R. R. Co., 73 Md. 374, 21 Atl. Rep. 62; Chicago, Burlington & Quincy R. R. Co. vs. Sykes, 96 Ill. 162; Stakus vs. New York Central & Hudson

River R. R. Co., 79 N. Y. 464; Parker vs. Lake Shore & Michigan Southern Ry. Co., 20 Ill. App. 280; Cook vs. Missouri Pacific Ry. Co., 19 Mo. App. 329; Baltimore & Ohio R. R. Co. vs. Shipley, 31 Md. 368; Germond's Adm'r vs. Central Vermont R. R. Co., 65 Vt. 126, 26 Atl. Rep. 401. The proofs, as before seen, were conflicting as to whether the engineer on his engine gave the proper signals with his bell or whistle, and as to whether he was keeping a vigilant lookout ahead of his engine. If the testimony for the plaintiff is believed, to the effect that no warnings were given with bell and whistle, and that the engine-driver was looking in the opposite direction, at the time of the accident, to the one in which he was going, then it was for the jury to say whether such negligence on his part did not contribute to the injury, or whether, had he been keeping vigilant outlook, he might not have discovered the blind condition of the plaintiff in time to have stopped his engine and thus prevented the injury. Though the plaintiff may have been guilty of contributory negligence in stepping upon the track immediately in front of a moving engine, yet the defendant is still liable for the injury, if it could have prevented it by the exercise of reasonable and proper care after the discovery of the plaintiff's negligent act, or if it could have discovered it, by the exercise of such care, in time to avoid the injury. Powell vs. Missouri Pacific Ry. Co., 59 Mo. App. 626.

The sixteenth and seventeenth instructions requested by the defendant and refused by the judge stated the law correctly, but were not so framed as to fit the facts in proof. They are based upon the hypothesis that the employes saw the plaintiff on the

track and had the right to exercise the presumption that he would get off. Had they been framed in accordance with the facts, that persons in charge of such engines had the right to presume that adult persons were possessed of their faculties, and when standing near or beside their track would not get on them immediately in front of their approaching engines, it would have been proper to have given them. An engine-driver seeing an adult upon the track ahead of his engine, or beside the track, has the right to presume that he has possession of his faculties, and that he will obey the instinctive law of self-preservation by getting off the track if already on it, or that he will not get on it if already off, unless such engineer, or other person in charge of the engine, knows the party, and that he labors under some disability that will prevent his getting or keeping out of the way, or that prevents his knowing of his danger, or unless he sees that the party will not or can not get or keep out of the way. Maloy vs. Wabash, St. Louis & Pacific Ry. Co., 84 Mo. 270; Pierce on Railroads, p. 331 and cases cited. The engineer here did not know the plaintiff or of his infirmity of sight, and though he may have noticed him standing near or approaching the track, unless he knew of his infirmity, or saw evidences of it in his actions or appearance, he had the right to presume that he was possessed of all his faculties, and could not be expected to anticipate that the plaintiff would deliberately step upon the track directly in front of the moving engine, and in such event it would not be negligence on the defendant's part if he failed to attempt to stop his engine before the plaintiff actually got upon the track.

For the errors found in the charges of the court, the judgment is reversed and a new trial ordered.