## THE UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE, A BODY CORPORATE, *vs.* WILLIAM DURHAM.

*Negligence : street cars; contributory negligence; crossing tracks without looking; speed of car; when not material.*

In an action for damages received in a collision with a street car the question of the speed of the car is material only when it is the direct and proximate cause of the injury.

p. 195

Where a party driving on a dark night, without a light, stopped to let a car pass on the near track, but continued without stopping to look or listen if any car was approaching on the far tracks, which were hidden from view by the car just passed, he is guilty of contributory negligence.

pp. 196-197

If the plaintiff is guilty of contributory negligence, the question of negligence *vel non* on the part of the defendant becomes immaterial.                                    p. 197

Parties about to cross the tracks of a railroad company are bound under all circumstances to look and listen for approaching trains; and if the crossing is one of more than ordinary danger and the view of the tracks is obscured, at or near the place of crossing, it is the duty of the traveler to stop, look and listen before he attempts to cross; and if a person neglects these precautions and in consequence of such neglect is injured by collision with a passing train he is held to have contributed by his own negligence to the accident and will not be allowed to recover for any injury he may have sustained.                                    p. 198

*Decided January 11th, 1912.*

Appeal from the Circuit Court of Baltimore County (DUNCAN, J.), where there was a judgment in favor of the plaintiff for $2,500.00.

U. RWY. AND E. CO. vs. DURHAM.          193

Md.]                    Opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-BRIDGE, JJ.

*J. Pembroke Thom* and *Joseph C. France,* for the appellant.

*D. G. McIntosh* (with whom was *T. C. Hopkins,* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

It is not necessary to determine all of the questions raised by the record on this appeal, because in the view we take of the case we are of opinion that the Court below committed an error in rejecting the defendant's third prayer, which is as follows: The defendant prays the Court to instruct the jury that under the pleadings and evidence in this case there is no evidence legally sufficient to entitle the plaintiff to recover and their verdict must be for the defendant.

The suit was brought by the appellee against the United Railways and Electric Company of Baltimore City, a corporation, and the defendant, in the Court below, to recover damages for personal injuries received by him while driving his market wagon with a team of mules along Willow avenue, a public road in Baltimore county, near the city limits.

The plaintiff on the 15th of October, 1909, the night of the accident, was driving up Willow avenue to the York road in a covered wagon drawn by two mules, and it was in attempting to cross the railroad tracks at the intersection of Willow avenue, the terminal of the York road, and the turnpike that the accident occurred. At this point the York road runs north and south and Willow avenue enters it from the east, and the plaintiff at the time of the accident was coming west on Willow avenue.

The plaintiff's account of the accident, as stated in his testimony is as follows: "The last stop I made that evening

was at Mr. Long's, on the York road, and just about the time I left there I asked him the time of the day, and he said it was ten minutes past seven; it was a dark night; so I *came up Willow avenue, around up Willow avenue to the York road, to the railroad.* When I first got to the railroad there was a car coming, going to Towson, ringing the bell; I stopped; so did the car stop and let off some passengers, and when it started I looked down the track; it was about the time of the evening when the cars run a little thick. I looked down the track and saw no cars coming down the track; I looked up the track and didn't see any cars coming, and then I started across; when I pulled up on the first track I looked up the track again; I saw no car and I didn't look any more until I got on this other track; I didn't drive fast; I had a right heavy wagon and in the neighborhood of one thousand pounds in it; I saw the car about six or eight feet from me before it struck me; that is the last thing I remember; when the car struck me I didn't even feel the shock of the car or anything of the kind."

On cross-examination, he testified that he had traveled on the same road as on the evening of the accident for about twenty years and ever since he was eighteen years old, and that the car was six or eight feet from him when he first saw it.

"Q. You kept looking to see whether the car was coming? A. No, I looked the first time, until I looked the second time then I saw the car was on me. Q. When you looked the second time the car was on you? A. Yes, sir. Q. Then you looked—before you got on the northbound track and looked, did you? A. Yes, sir. Q. The next time you looked the car was on you? A. I was on the northbound track when I looked up the track, I saw the car was not coming down; I didn't see it when I looked the first time, but when I looked again the car was right on me about six or eight feet from me."

He further testified that the curtains of the wagon were down that he was driving in a slow walk and he supposed

this obstructed the view, as it tore the curtain "right off when I went through." There was evidence that one could see a long distance up the track, but if a car was coming up and one going down ahead of it, you could not see the car coming down.

There was also evidence to the effect that the headlight and all the lights inside of the southbound car were burning, but there was no light upon the wagon, driven by the plaintiff. The motorman testified, that he did not see the wagon and team until within thirty or forty feet of it and used every effort to stop the car and prevent the accident, when he discovered the situation of the plaintiff. The evidence as to the excessive speed of the car at the time of the accident, is not very definite, but unless the improper speed was the direct and proximate cause of the injury and that the injury would not have occurred but for the excessive speed there could be no recovery upon this ground. *P. W. & B. R. R.* v. *Stebbing,* 62 Md. 517; *Hayes* v. *R. R. Co.,* 111 U. S. 228; *B. & O. R. R. Co.* v. *State,* 62 Md. 479.

Upon the proof, we think, this is a clear case of contributory negligence, upon the part of the plaintiff, and there is nothing in the record, to take it out of the operation of the rules and principles established by this Court in *Meidlings' Case,* 97 Md. 77; *McNab's Case,* 94 Md. 728; *Manfuso's Case,* 102 Md. 257; *Hatcher's Case,* 103 Md. 78; *Brehm Case,* 114 Md. 302; *Hickox Case,* 104 Md. 659, and *Winter's Case,* 115 Md. 69. (80 *Atl. Rep.* 65).

While the plaintiff in this case stopped his wagon about twenty-five or thirty feet from the crossing in order to permit the northbound car to pass, he neglected as he approached the second track, to use that care and caution required of him, that is, to continue to look until the southbound track, the real point of danger, was reached.

If, as the proof shows, he drove to the second track, where his view was obstructed by the southbound car which had just passed, and proceeded in the manner testified to by him to drive across the second track, on a dark night, with

no light on his wagon and with curtains down, he was guilty of negligence directly contributing to the accident.

In *Manfuso* v. *Western Md. R. Co.,* 102 Md. 261, it is said, by the settled law of this State certain well defined and imperative duties are imposed upon persons before they make the attempt to cross the tracks of a railroad company. They are bound under all circumstances to look and listen for approaching trains, and if the crossing is one of more than ordinary danger and the view of the tracks is obstructed, at, or near the place of crossing, it is the duty of the traveler to stop, look and listen before he attempts to cross; and if a person neglects these necessary precautions, and in consequence of such neglect is injured by the collision with a passing train he will be held to have contributed by his own negligence to the occurrence of the accident, and will not be allowed to recover for any injury he may have sustained.

In *Winter* v. *United Rys. Co.,* 115 Md. 69, we said: The driver when he halted at the northbound gutter was in a place of safety, and if he had then exercised such reasonable care as might be expected of an ordinarily prudent driver, and waited for a few seconds until the westbound car had gone far enough on its way to uncover the view of the street for a reasonable distance west, he would have seen the east-coming Madison avenue car and could easily have allowed it also to pass before attempting the crossing and thus have prevented the collision. * * *

In *Hatcher* v. *McDermot,* 103 Md. 78, we held that the plaintiff was guilty of contributory negligence for crossing an electric railway on a public crossing without having again stopped, looked and listened for a car, after he left a point about one hundred and thirty feet distant from the crossing, where he did stop, look and listen, but where his view was obstructed to some extent.

In the case at bar the plaintiff was familiar with the crossing and the surroundings because he stated that he had traveled the route for about twenty years. If he had

stopped, looked and listened, before attempting to cross the second track, after the northbound car had passed, he could not fail to have seen or heard the approach of the car, in time to have avoided the accident. He had an unobstructed view of over three hundred feet up the southbound track, to have seen the approach of the car, with full headlight, and all the inside lights burning brightly, had he stopped and looked.

In *Sparr* v. *United Rys. Co.,* 114 Md. 320, it is said. It is apparent that if he had looked before entering upon the track of the railway he would have seen the car approaching, and if he did look and did see the car, he was guilty of negligence in attempting to cross in front of it. If, on the other hand, he did not see the car, it must have been because he did not look, and it was negligence on his part to venture to cross the track without observing the precaution of looking to see if a car was coming. Even if those in charge of the car saw the appellant before he got on the track, they had a right to assume that he would stop in a place of safety and not attempt to cross in front of the car. And to the same effect are the cases of *McNab* v. *Rys. Co.,* 94 Md. 719; *Heying* v. *United Rys.,* 100 Md. 281.

Assuming, then, in this case, there was some evidence of excessive speed or negligence on the part of the appellee, there is no evidence to show that it has any casual connection with the accident itself, or showing that the injury was the direct consequence of such excessive speed. As was said by this Court in *Heying* v. *Rys. Co.,* 100 Md. 281, if the plaintiff·was guilty of contributory negligence, the question of negligence *vel non* on the part of the defendant becomes immaterial, for if there was no negligence on its part there can be no recovery, and if there was, the same result would follow because of the plaintiff's contributory negligence.

In the present case the evidence shows that the plaintiff's negligence was the last and·final negligent act, and it become

unnecessary to discuss further this branch of the case. *Heying* v. *Rys. Co.,* 100 Md. 281; *P. W. & B. R. R. Co.* v. *Stebbing,* 62 Md. 517; *C. & P. R. R. Co.* v. *State,* 73 Md. 77; *McNab* v. *Rys. Co.,* 94 Md. 729; *Philips* v. *W. & R. Ry. Co.,* 104 Md. 455.

Being of opinion, that the plaintiff in this case was guilty of contributory negligence, and that the case should have been withdrawn from the jury on that ground, the judgment will be reversed, and as there can be no recovery, a new trial will not be awarded.

> *Judgment reversed, without a new trial, with costs.*