# RANDOLPH B. MASON

## *vs.*

## THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Crossing Drawbridge—Contributory Negligence.*

In an action for injuries received while crossing a drawbridge, *held* that plaintiff was guilty of contributory negligence precluding recovery, by reason of his failure either to slacken speed upon hearing a signal to open the draw or to stop after the safety gate rose in front of him.

*Decided January 12th, 1921.*

Appeal from the Baltimore City Court (AMBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Frederick J. Singley,* with whom were *Hinkley, Hisky & Burger* and *John D. Nock* on the brief, for the appellant.

*Allen A. Davis, Deputy City Solicitor,* with whom was *Roland R. Marchant, City Solicitor,* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the court.

The plaintiff in this case seeks to recover damages for injuries sustained by him and to his automobile while driving his automobile over Hanover Street Bridge (a public highway), in the City of Baltimore.

The declaration contains two counts. The first charges that the draw of the bridge was carelessly and negligently

opened and operated by the defendant, its agents and employees while the plaintiff was lawfully on the bridge, causing the automobile of the plaintiff to be badly broken and damaged, and the plaintiff was put to great expense in having the same repaired.

The second count charges that the plaintiff, while driving his automobile over the Hanover Street Bridge (a public highway), in the City of Baltimore, and while exercising due care on his part, the draw of the bridge was carelessly and negligently opened and operated by the defendant, its agents, and employees while the plaintiff was lawfully using the bridge, and in consequence of which and the breaking of the automobile the plaintiff was thrown violently therefrom and was seriously and permanently injured.

The trial resulted in a verdict in favor of the defendant by reason of the granting of a prayer by the court, at the close of plaintiff's testimony, to the effect that the plaintiff was guilty of contributory negligence and that their verdict must be for the defendant.

From a judgment entered on this verdict the plaintiff has taken this appeal.

The facts as they appear in the record, briefly stated, are these: On the 21st of September, 1918, the plaintiff left his home in Waverly, in the suburbs of Baltimore, to go to his farm, on the Magothy River, in Anne Arundel County. He was driving a Ford automobile car, and had to cross the Patapsco River over what is called the Hanover Street Bridge from Baltimore City to Brooklyn. This bridge is quite long, and about the centre of the bridge is a draw of cantilever type, about 192 feet long, and the draw is raised to allow boats to pass through it. The plaintiff was driving south in his automobile, and when he got about one hundred feet of the draw he heard a tug blow a whistle west of the bridge, indicating that it wanted to pass under or through the draw of the bridge. There was a large automobile, a Ford car, and a boy on a bicycle ahead of the plaintiff's car.

At the time he entered the bridge he was operating his car between seventeen and eighteen miles an hour, but made no stop nor decreased the speed, but kept going on over the bridge after he heard the whistle of the tug.

It further appears that when the plaintiff's automobile reached a point about twenty-three feet from the north end of the draw the siren or horn on the bridge blew and the obstruction or safety gate began to rise ten or fifteen feet in front of him, and, without attempting to stop the car, he ran the front wheels of the automobile over the raised gate and went across the draw and over the balance of the bridge.

The plaintiff testified that: "As soon as I found that the bridge had not raised any higher I pulled on all the gas I had and went across the balance of the bridge as fast as I could go; I was not bothering about the speed limits then; I was trying to get across the bridge; and when I got across the bridge I started to apply my foot brake and it would not work, and I reached down and grabbed my emergency brake, and it come back with no power at all. This was practically a brand-new car. I bought it some time about the middle of June, three months prior to this accident, and the car was in splendid condition and all right, and I just had to let it drift along then, and it drifted along a piece, and I found it started to sheer around to the right, and it turned over cross-ways of the bridge—the road, I guess we would call that part—then, and the left front wheel buckled up under the car and it went over and threw me down on the bow on the left side, and this arm across this way (indicating), and the young man with me, he went out the windshield"; that he fell on his left side, and his left arm was broken. He also testified that the day of the accident was not the first time he had been over the bridge; that he goes over the bridge on the average of two or three times a week, and that he has been over the bridge about one hundred and fifty times since the accident.

On cross-examination the plaintiff testified: The accident happened about 3.30 o'clock on Saturday afternoon while the witness was driving his Ford car, going south. He was seated at the wheel on the left-hand side. His helper, Mr. Cook, was sitting on his right. He had run over the bridge many times. That there is a whistle or horn or something that blew just as witness got to the obstruction. Witness has heard the horn blow possibly three or four times, as he has only seen the draw raise about three or four times when he was close to it. At the north side of the bridge there is a gate that goes up about three feet. It had some braces in it, and across the top is a bar of iron about four inches wide that stretches clear across the top of it. There were no black and white stripes on the iron plate the time of the accident, but they have been put on since. Witness thinks that the south end of the draw raises first, and then the north end. Suppose that there is some kind of mechanism that operates them. Witness heard the siren when he was within ten or fifteen feet of the obstruction. He has heard it more since the accident than he did before. That the siren is a horn that is blown on the bridge when they get ready to raise the draw.

There were other witnesses on the part of the plaintiff, but their testimony substantially agrees with that of the plaintiff, and need not be set out for the purposes of the conclusions we have reached in the case.

This is a clear case, we think, of contributory negligence on the part of the plaintiff. It is apparent from all the evidence that the plaintiff, with a reckless disregard of his safety, attempted to outrun the opening of the draw of the bridge, and ran into the obstruction or safety gate as it arose in his path in crossing the bridge.

The plaintiff, as stated by the appellee in its brief, had three chances to avoid the accident, all of which he neglected:

First—He knew there was a drawbridge there; was familiar with its operation, and knew that it was a place of

danger. He heard the tugboat blow, indicating its desire to pass through the draw. This alone was sufficient to put him on his guard and indicate to an ordinarily prudent man that he should slow down the speed of his machine and bring it under easy control.

Second—He had another opportunity to avoid the accident after the siren blew and the gate rose up in front of him. He was then going upgrade at about seventeen or eighteen miles an hour with two brakes, either of which would have caused the wheels of his machine to slide and brought it to a stop; but he still kept his gas on, did not apply the brakes, and went over with his front wheels. Had he, after seeing the gate in his path, used the means at hand which an ordinarily prudent man would have done, he could have stopped the machine before any serious damage was done; and

Third—If, after having struck the gate and seeing that his automobile was still to the north of the draw, he had shut off the gas and stopped, he would have avoided personal injury. The more serious part of his damage happened after he had crossed the draw, and was occasioned by the automobile overturning and throwing him out. This all could have been avoided by his stopping and seeing what had happened.

The law is well settled in this State as to the duty of a traveller about to cross a drawbridge.

In *County Commissioners of Anne Arundel County* v. *State, use of Stansbury et al.*, 107 Md. 210, it is said it is the duty of a person driving across a drawbridge to look and listen in order to ascertain if the draw is open, and if he falls through an open draw which he would have known to be open if he had looked and listened to the signals and sounds indicating that it was open, he is guilty of contributory negligence. *Cullen* v. *N. Y., P. & N. R. R. Co.*, 127 Md. 651; *Glick* v. *Cumb. & W. Elec. Ry. Co.*, 124 Md. 308; 4

*R. C. L.,* Sec. 33 (Bridges); *Benedict* v. *Port Huron,* 124 Mich. 600.

The plaintiff in this case, it would seem upon the whole evidence, took the chances and assumed the risk of crossing the bridge before the draw was raised and opened, and thus the accident was due to his own neglect and recklessness. As was said by this Court in *Heying* v. *United Rwys. Co.,* 100 Md. 281, it is only one more case where the injury was caused by an error of judgment and for which there can be no recovery by reason of the contributory negligence of the plaintiff. *State, use of Meidling,* v. *United Rwys. Co.,* 97 Md. 73.

As the conclusion we have reached upon the prayer disposes of the case, the rulings of the court upon the admissibility of evidence become unimportant and need not be discussed by us.

Finding no error in the ruling of the court in granting the defendant's prayer, which instructed the jury that the plaintiff was guilty of contributory negligence, and in directing a verdict for the defendant, the judgment of the court below will be affirmed.

*Judgment affirmed, with costs.*